UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WAYNE GREENE,

    Plaintiff,

v.

SEA HARVEST, INC. and FV
PONTOS LLC,

    Defendants.

1:17-cv-04104-NLH-JS

**OPINION**

**APPEARANCES:**

BRIAN A. WALL, JR.
FRANCESCA ANN IACOVANGELO
MCCANN & WALL, LLC
TWO PENN CENTER PLAZA
1500 JOHN F. KENNEDY BLVD
SUITE 1110
PHILADELPHIA, PA 19102

JONATHAN E. GILZEAN, ESQ.
LATTI & ANDERSON LLP
30-31 UNION WHARF
BOSTON, MA 02109

    On behalf of Plaintiff

BRIAN MCEWING
REEVES MCEWING LLP
681 TOWNBANK ROAD
CAPE MAY, NJ 08204

MARY ELISA REEVES
REEVES MCEWING LLP
1004 S. FRONT STREET
PHILADELPHIA, PA 19147

    On behalf of Defendants

**HILLMAN, District Judge**

    This matter concerns claims by a seaman for injuries he

sustained on a fishing boat.  Defendants have moved to dismiss Plaintiff's claims, or in the alternative Defendants have moved for summary judgment in their favor, based on a purported agreement between the parties where Plaintiff released all of his claims against Defendants arising out of his work injury. For the reasons expressed below, Defendants' motion will be denied.

## BACKGROUND

In his complaint, Plaintiff, Wayne Greene, claims he was working on the fishing boat F/V PONTOS when he was injured. Based on his injury, Plaintiff has asserted claims against his employers, FV PONTOS, LLC and Atlantic Capes Fisheries, Inc.,[1] for maritime negligence, unseaworthiness, and failure to provide proper maintenance and cure.[2]  Plaintiff's complaint contains no

---

[1] Since the filing of Plaintiff's complaint, Sea Harvest Inc. has been substituted for Atlantic Cape Fisheries, Inc.  (Docket No. 21.)

[2] The U.S. Supreme Court has described the "ancient duty of a vessel and her owner to provide maintenance and cure for seamen injured or falling ill while in service":

> The duty, which arises from the contract of employment, does not rest upon negligence or culpability on the part of the owner or master, nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness.  It is not an award of compensation for the disability suffered, although breach of the duty may render the owner liable for the consequential damages suffered by the seaman.  The maintenance exacted is comparable to that to which the seaman is entitled while at sea, and 'cure' is care, including nursing and

2

other details about his injury or Defendants' actions relative to his injury.

Defendants have moved to dismiss Plaintiff's claims, or seek summary judgment on Plaintiff's claims, based on a release that Defendants contend Plaintiff signed when he was cleared to return to work by his doctor. The parties' submissions in support of and in opposition to Defendants' motion provide more information on the circumstances of Plaintiff's injury and the subsequent events relating to the purported release.[3]

Plaintiff relates that he has been a commercial fisherman for 31 years and has a 10th grade education. On September 22,

---

    medical attention during such period as the duty
    continues.

Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 527–28 (1938) (internal citations omitted), cited in Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001) ("A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship.").

[3] Because Defendants' motion is supported by documents and other submissions that are well outside of the allegations contained in Plaintiff's complaint, Defendants' motion can only be construed as one for summary judgment under Fed. R. Civ. P. 56. See S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (explaining that a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice); Fed. R. Civ. P. 12(b) (providing that if any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56).

2014,[4] while working on the F/V PONTOS, Plaintiff suffered a rupture of his right distal bicep tendon. Despite his injury, Plaintiff remained on the vessel and worked the rest of the trip until it returned to port a day or two later.

Once back on shore, an Atlantic Cape Fisheries' employee referred Plaintiff to an orthopedic surgeon, Dr. Thomas Barrett, who recommended an immediate surgical repair, which he performed on September 29, 2014. Plaintiff was unable to work until he was cleared by Dr. Barrett on March 20, 2015.

Defendants contend that on March 20, 2015, Plaintiff came to the Atlantic Cape Fisheries' office and met with Sam Martin, the vice-president of operations, along with another employee who was a notary, to sign a fit-for-duty form and formal release of his claims. Martin claims that he read each line of the four-page release to Plaintiff, and asked whether Plaintiff wanted to review it with a lawyer or his family. Martin claims that Plaintiff declined, and after understanding that he was giving up all of his rights relating to his injury, Plaintiff signed the release. Defendants further relate that Plaintiff was paid $16,800 in advance during his period out of work, $9,000 for maintenance, $25,000 for cure, and $5,000 in "new

---

[4] Plaintiff's complaint states that the date of injury was September 28, 2014. It appears from the parties' submissions that the date of injury is September 22, 2014.

4

money" when he signed the release. Defendants argue that Plaintiff's claims against them are barred by this valid release, which was supported by proper consideration and was knowingly agreed to by Plaintiff.

Plaintiff has opposed Defendants' motion and disputes Defendants' characterization of the release and the circumstances of his meeting with Martin and the payments he received while on medical leave. Plaintiff relates that the $50 per day in maintenance, which was insufficient under the law, left him in a dire financial condition, and when he met with Martin, he was desperate to return to work to regain his regular income. Plaintiff claims that Martin knew of his financial plight, and laughed at Plaintiff's initial request for $20,000 when Martin asked him what it would take the settle the matter, and said he would only pay $5,000. Plaintiff further claims that Martin said that Plaintiff would never work for Atlantic Cape Fisheries again if Plaintiff did not sign the release or took the release to an attorney. Plaintiff relates that Martin never explained the legal consequences of the provisions in the release.

Plaintiff claims that Martin showed him a one-page release, on which Plaintiff wrote his name and filled out some other information, and a copy of only that page was provided to him. The purported release that Defendants have provided in support

5

of their motion contains four pages, however, and Plaintiff's name is misspelled on the remaining pages, including in his alleged signature.

After the meeting, Plaintiff cashed the $5,000 check to pay some outstanding debts, and returned to fishing on the F/V PONTOS for two trips. According to Plaintiff, when he returned from the tips, Atlantic Cape Fisheries deducted $3,000 - $4,000 from his fishing shares to recover the "advances" it paid Plaintiff. Plaintiff claims that because Atlantic Cape Fisheries refused to refund his wages, he quit. Plaintiff relates that he successfully returned to commercial fishing with another company, but he continues to suffer pain, tingling, weakness, and stiffness in his bicep.

Based on the foregoing disputed facts, Plaintiff argues that Defendants' motion must be denied.

## DISCUSSION

### A. Subject matter jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to The Merchant Marine Act of 1920, commonly called the Jones Act, 46 U.S.C. § 30104 et seq. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1333.

### B. Standard for Summary Judgment

Summary judgment is appropriate where the Court is

of their motion contains four pages, however, and Plaintiff's name is misspelled on the remaining pages, including in his alleged signature.

After the meeting, Plaintiff cashed the $5,000 check to pay some outstanding debts, and returned to fishing on the F/V PONTOS for two trips. According to Plaintiff, when he returned from the tips, Atlantic Cape Fisheries deducted $3,000 - $4,000 from his fishing shares to recover the "advances" it paid Plaintiff. Plaintiff claims that because Atlantic Cape Fisheries refused to refund his wages, he quit. Plaintiff relates that he successfully returned to commercial fishing with another company, but he continues to suffer pain, tingling, weakness, and stiffness in his bicep.

Based on the foregoing disputed facts, Plaintiff argues that Defendants' motion must be denied.

## DISCUSSION

### A. Subject matter jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to The Merchant Marine Act of 1920, commonly called the Jones Act, 46 U.S.C. § 30104 et seq. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1333.

### B. Standard for Summary Judgment

Summary judgment is appropriate where the Court is

satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a

genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **C.    Analysis**

The factors to consider in assessing the validity of a seaman's release of his claims for an injury sustained in his course of duties were established 75 years ago and remain controlling to this day.  Succinctly stated:

> [S]eaman are entitled to special protection in legal matters, and accordingly, there is a two-part test to determine the enforceability of a seaman's release.  First, a court must determine whether the release was executed freely, without deception or coercion.  Second, a court must examine whether the seaman entered the settlement with a full understanding of his rights.  The adequacy of consideration and the nature of the medical and legal advice available to the seaman are key issues in the analysis of this understanding.

Jackson v. Delaware River and Bay Authority, 334 F. Supp. 2d 615, 617-18 (D.N.J. 2004) (citing Garrett v. Moore-McCormack Co., 317 U.S. 239, 248 (1942)); see also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, 2017 WL 4764365, at *8 (E.D. La. 2017) (discussing the

8

Garrett standard for assessing a seaman's release, and noting that seamen are considered as "wards of the court" needing special protections from potentially overreaching ship owners); cf. Rabenstein v. Sealift, Inc., 18 F. Supp. 3d 343, 355 (E.D.N.Y. 2014) (quoting McKelvey v. Am. Seafoods, No. 99-CV-2108, 2000 WL 33179292, at *1 (W.D. Wash. Apr. 7, 2000)) ("'Despite the fact that plaintiff is a seaman and therefore entitled to significant legal protections, seamen are no less bound by their voluntary and knowing agreements than are other individuals.'").

Moreover, on a motion for summary judgment based on a seaman's release, the shipowner has heavy "'burden to shoulder, for he must conclusively demonstrate the absence of genuine issues of material fact.'" Irons v. Matthews, 2010 WL 2540347, at *4 (D.N.J. 2010) (quoting Halliburton v. Ocean Drilling & Exploration Co., 620 F.2d 444, 445 (5th Cir. 1980)). As a result, "[i]n the context of admiralty jurisdiction, summary judgment is often considered an inappropriate procedure to determine the validity of a seaman's release." Id. (citing Complaint of Bankers Trust Co. v. Chatterjee, 636 F.2d 37, 39 (3d Cir. 1980)).

In this case, Plaintiff has presented disputed issues of material fact relating to the validity and enforceability of the release Defendants contend Plaintiff understood and signed.

Plaintiff has challenged the actual document itself, arguing that he only saw the first page, and did not see, and therefore did not complete, sign, or understand the additional pages presented by Defendants. This disputed fact is supported by Plaintiff's testimony - the credibility of which this Court cannot assess at summary judgment - and by the significance of the consistent misspelling of Plaintiff's last name in the three pages that comprise the release,[5] where the first page completed by Plaintiff records his name as "Wayne Greene," but the remaining pages show "Wayne Green." Even though the first page contains the basic summary of the payments to Plaintiff and the agreement to release his claims, it is the third page which contains Plaintiff's purported signature which, if authentic, would evidence his agreement to the terms of the entire four-page release. Thus, the factual dispute as to the authenticity of the full release alone defeats summary judgment.

Other disputed facts further support the denial of summary judgment, including the dispute over: the maintenance and cure payments, the purported consideration paid to Plaintiff to execute the release, the content of the meeting between Plaintiff and Martin, and the extent of what Plaintiff understood regarding the legal ramifications of signing a

---

[5] The fourth page is the acknowledgement by the notary public.

release.  See, e.g., Double J. Marine, LLC v. Nuber, 2013 WL 6502866, at *3 (E.D. La. 2013) (discussing the Garrett factors and denying summary judgment on a defendant's argument that the seaman validly released his claims, noting that the seaman only had a 10th grade education, and the disputed facts relating to the content of the meeting between the insurance adjuster and the seaman where the seaman purportedly understood the ramifications of the release warranted the denial of summary judgment on that issue alone).

It is clear that Defendants have not met their heavy burden on the current record to establish that: (1) the release was executed freely, without deception or coercion, and (2) Plaintiff entered the settlement with a full understanding of his rights.  Consequently, Defendants are not entitled to judgment in their favor at this time.

## CONCLUSION

For the reasons expressed above, Defendants' motion for summary judgment must be denied, and case may proceed in due course.  An appropriate Order will be entered.


Date: February 23, 2018      s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.